UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA A. SAULTER,

    Plaintiff,

v.

                                      Case No. 11-cv-13006

DETROIT AREA AGENCY ON AGING,        Honorable Julian Abele Cook, Jr.

    Defendant.

## ORDER

The Plaintiff, Barbara Saulter, filed this action against the Defendant, Detroit Area Agency on Aging ("DAAA"), alleging that it had wrongfully terminated her employment. Her complaint recites the following counts: (1) retaliatory discharge in violation of the Michigan Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.361 et seq.; (2) continuing violation of the WPA; (3) retaliatory discharge in violation of the Michigan Worker's Disability Compensation Act ("WDCA"), Mich. Comp. Laws § 418.301(11); (4) violation of the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (5) violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101; and (6) violation of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 201 et seq.

This action, originally filed in a Michigan state court, was removed to the Eastern District of Michigan on July 13, 2011 on the basis of its federal question jurisdiction, 28 U.S.C. § 1331, and

1

supplemental jurisdiction, 28 U.S.C. § 1367. Currently before the Court is the DAAA's motion for summary judgment as to each of Saulter's claims.

I.

This case arises from the termination of Saulter's employment with the DAAA, which is a Michigan non-profit corporation that provides services to senior members of the Detroit area community. These services include home care, employment workshops, health insurance counseling, and meal service through the Detroit Meals on Wheels program. Saulter is a registered dietician with extensive experience and certification.

On September 6, 2006, the DAAA hired Saulter as its nutrition service manager. Her duties included overseeing the feeding of thousands of seniors through the home-delivered meal program and the congregate site program, which involved management of two separate vendors. She reviewed the contracts, ensured the vendors' compliance with the contracts, taste-tested the food, and visited sites to ensure compliance with governmental regulatory standards. Saulter frequently met with the two vendors to discuss various concerns, including upcoming meals, changing regulations, and budgetary issues. In 2008, the congregate meal sites became self-managed. Accordingly, Saulter's duties for these sites were reduced.

The DAAA's budget depends heavily on fluctuating state and federal funding sources. During the fall of 2009, the DAAA began implementing a "Zero-Based Budgeting" administrative analysis which was designed to increase efficiency and to lower costs within the DAAA. This review showed that Saulter was over-weighted with administrative tasks and responsibilities. With Saulter's support, the DAAA hired a Senior Nutrition Assessor.

On December 29, 2009, Saulter requested and began a medical leave of absence, indicating

2

that her leave was due to stress from taking care of her sick father, as well as her own severe intestinal pain and severe sinus problems. Due to the DAAA's restructuring based on the "Zero-Based Budgeting" plan, a number of Saulter's job responsibilities had shifted to other departments prior to her leave. In January 2010, she notified the DAAA by telephone voicemail of her intention to file for short term disability in order to extend her leave and of her belief that her condition was work-related.

In January or February of 2010, Gale Simmons, Vice President of Community Services, concluded that all of Saulter's remaining duties were being adequately covered while she was on leave. Simmons also realized that the DAAA continued to need a registered dietician to approve the menus at the congregate meal sites in order to satisfy the guidelines of the Office of Services for Aging ("OSA"). However, the registered dietician position did not need to be an employee of the DAAA. In February, the DAAA sought a temporary independent contractor to fill this role during Saulter's extended leave. In the meantime, it relied upon registered dieticians from the two food vendors, who performed this service free of charge. By March of 2010, Simmons realized that, as a result of these reorganization efforts, the DAAA no longer needed a full-time nutrition manager. As part of its restructuring of two departments, the DAAA eliminated the nutrition manager position in favor of a part-time contract registered dietician. In a letter on March 30, 2010, President and CEO Paul Bridgewater advised Saulter of the decision by the DAAA to terminate her employment. On the same date, she filed an application for mediation or a hearing to initiate a WDCA claim. Saulter returned to the DAAA from her medical leave of absence on April 5, 2010.

Throughout her employment with the DAAA, Saulter reported a number of violations by the food vendors, including failed deliveries and substandard food preparation, to the DAAA. Its

3

management followed up with each of Saulter's concerns. However, Saulter asserts that she occasionally felt that her concerns were left unrecognized. (Saulter Dep. 104:23-25, Ex. A to Def.'s Mot. Summ. J.). According to the DAAA, its management appreciated Saulter's attention to these matters. Although Saulter did not report these violations to anyone outside of the agency, she testified that she felt that "something needed to be done more . . . [s]ome additional outside help or something needed." (*Id.* at 104:17-23).

At the beginning of April, the DAAA informed Saulter that a part-time independent contractual registered dietician position was being created and encouraged her to apply for the job. Saulter interviewed, but requested a pay rate that was higher than the DAAA was willing to pay. Ultimately, the DAAA, after opting to continue its use of vendors' registered dieticians to perform the required services, did not hire anyone for this position.

Additional reorganization in April 2010 led the DAAA to consider creating a director of wellness position. The DAAA discussed this position with Saulter, but, after deciding to focus on the agency's business development, it created a new director of program development position rather instead of a director of wellness position.[1]

## II.

The summary judgment rule primarily aims to "isolate and dispose of factually unsupportable claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Entry of summary judgment is proper only where the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact will exist if the fact in question "might affect the outcome of the suit

---

[1] Saulter was not qualified for, and therefore did not apply to, the director of program development position.

under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The debated facts must be supported by more than a mere scintilla of evidence in order to create a genuine dispute. *Id.* at 252.

In determining whether there is a genuine issue of a material fact, the record is viewed in the light that is most favorable to the nonmoving party. *Id.* at 255. Considering the substantive law, a summary judgment must be entered if the non-moving party fails to present evidence that is "sufficient to establish the existence of an essential element to its case, and on which it will bear the burden of proof at trial." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (quoting *Celotex*, 477 U.S. at 322. If the moving party makes its required showing, then the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e).

III.

In Counts I and II of her amended complaint, Saulter claims that (1) the DAAA terminated her employment in violation of the Michigan WPA after she had reported violations of governmental contracts, standards, and regulations by vendors who delivered food to the agency, and (2) the failure of the DAAA to interview and/or employ her for certain positions after her termination constitutes a continuing violation of the WPA.

In its motion for summary judgment, the DAAA argues that Saulter cannot prove that she was engaged in a protected activity. In making this argument, it submits that Saulter did not report and was not about to report a suspected violation of law to a public body, as protected by the WPA, because she was merely performing her duties as an employee. In response, Saulter submits that reporting to a public body-employer qualifies as a protected activity under the WPA.

5

The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body.[2] Mich. Comp. Laws § 15.362; *Shallal v. Catholic Soc. Servs. of Wayne Cnty.*, 566 N.W.2d 571, 575 (Mich. 1997). The underlying purpose of the WPA is to protect the public from corruption or criminally irresponsible behavior by large businesses or government entities. *Shallal*, 566 N.W.2d at 575. Although employees are often in the best position to report violations of law, they may be reluctant to do so out of fear of retribution. As a result, the WPA encourages employees to report violations that may harm the public. *Id*. The WPA, being a remedial statute, must be liberally construed to favor those persons whom the legislature intended to benefit. *Chandler v. Dowell Schlumberger, Inc.*, 572 N.W.2d 210, 215 (1998).

In order to establish a prima facie case of liability under the WPA, Saulter must initially show that (1) she was engaged in protected activity as defined by the act, (2) she was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 471-72 (Mich. 2003). If the plaintiff meets these requirements, the burden shifts to the defendant to articulate a nondiscriminatory, legitimate reason for the discharge. *Roulston v. Tendercare, Inc.*, 608 N.W.2d 525, 530 (Mich. Ct. App. 2000). If the defendant satisfies its burden, the burden returns to the plaintiff to show that the reason is merely pretext. *Id*.

---

[2] The text of the WPA provides: "An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action." Mich. Comp. Laws § 15.362.

Saulter is correct in arguing that the WPA's protected activity may be applicable to those situations wherein the employee reports suspected violations to her employer if the employer is a public body. *Brown v. Mayor of Detroit*, 734 N.W.2d 514, 595 (Mich. 2007) ("It does not matter if the public body to which the suspected violations were reported was also the employee's employer.") However, the WPA does not apply where the employee reported suspected violations as part of her required duties. *See, e.g.*, *Jennings v. Cnty. of Washtenaw*, 475 F. Supp. 2d 692, 710 (E.D. Mich. 2007) ("An employee does not engage in a 'protected activity' under the WPA by reporting unlawful conduct to her employer in the course of her employment - even if her employer is a public body."), *abrogation on other grounds recognized by Talhelm v. ABF Freight Sys., Inc.*, 364 F. App'x 176, 183 n.2 (6th Cir. 2010) ; *Bush v. Detroit Sch. Dist.*, No. 268362, 2006 WL 2685088, at *4-5 (Mich. Ct. App. Sept. 16, 2008) (citing cases). Saulter reported multiple violations to the DAAA within three years as a part of her job to ensure vendor compliance. In doing so, her main goal was not to alert the public of the vendors' wrongdoings. Instead, it appears from the record that Saulter was complying with her job duties when she reported concerns about violations of the DAAA's contracts with its vendors.

Putting the basic issue of whether Saulter's actions qualify as a protected activity aside, the Court concludes that she has not presented a sufficiency of evidence of causation to establish a prima facie case. Although Saulter argues that she lost work immediately following her reporting of irregularities by food vendors, a close relation in time does not establish causation. *See West*, 665 N.W.2d at 472-73 ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed."). Saulter has not presented any evidence regarding why her reports of violations would

7

have potentially led to her discharge. The DAAA management readily followed up on Saulter's concerns throughout the years, indicating no hostility against these types of reports. Bridgewater also testified that he believed Saulter's actions were desirable within her duties as an employee. While Saulter has testified that she felt "something needed to be done more," she has not presented any evidence that the DAAA believed she would potentially report violations to any other body in a manner undesirable to the DAAA.

Even if Saulter had established a prima facie case, the Court finds that the DAAA has presented a satisfactory legitimate, non-retaliatory reason for terminating her position. The DAAA's "Zero-Based Budgeting" plan appears to have led to a legitimate administrative decision to reduce, and subsequently eliminate, Saulter's position. This analysis is bolstered by evidence that the DAAA did not hire anyone to fill her position. Since Saulter has presented no evidence to suggest that this reason was offered as mere pretext for discriminatory conduct, the Court finds that Saulter has not established any genuine issue of a material fact with respect to her WPA claim.

In support of its motion for summary judgment regarding Saulter's claim for a continuing violation of the WPA, the DAAA argues that (1) the doctrine does not apply to this statute, and (2) her claim does not allege a continuing violation. The WPA allows civil actions to be brought within ninety days of an alleged violation. Mich. Comp. Laws § 15.363(1). Since many discriminatory acts occur in such a manner that it is difficult to precisely define when they begin, the continuing violation doctrine tolls applicable statutory limitation periods until a reasonable person would have become aware of the facts supporting the claim. *Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368, 377-78 (Mich. 1986). The continuing violation doctrine, therefore, allows a remedy for certain non-discrete discriminatory acts that occur outside the statute of limitations. *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). However, this doctrine cannot be invoked if an employee seeks redress for discrete acts of discrimination or retaliation. *See Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

Michigan courts have applied the continuing violation doctrine to claims under the WPA. *See Phinney v. Perlmutter*, 564 N.W.2d 532, 552 (Mich. Ct. App. 1997). However, the viability of this application has been called into doubt by the Michigan Supreme Court in *Garg v. Macomb County Community Mental Health Services*, 696 N.W.2d 646 (Mich. 2005), which rejected an application of the continuing violation doctrine for discrimination cases under the Elliott-Larsen Civil Rights Act but did not specifically overturn *Phinney*. *See also Moyer v. Comprehensive Rehab. Ctr.*, No. 292061, 2010 Mich. App. LEXIS 1722, at *9 (Mich. Ct. App. Sept. 16, 2010) (per curiam) ("Based on the precedent set forth by our Supreme Court in *Garg*, we are bound to conclude that the continuing violations doctrine is not applicable to WPA claims.").

However, even if Michigan courts will continue to allow the continuing violation doctrine to apply to WPA claims, the record is clear that Saulter has not made a sufficient showing of any continuing violation. Under the existing test for a continuing violation of the WPA, Michigan courts consider whether (1) the alleged acts involve the same type of discrimination; (2) the alleged acts are recurring; and (3) the act has a degree of permanence to indicate to the employee that she should assert her rights. *Phinney*, 564 N.W.2d at 552.

Although the DAAA argues that the failure to hire is a discrete discriminatory act, Saulter has presented multiple instances of failure to hire, which when taken as a whole, may qualify as a continuing act. *See, e.g.*, *Roberts v. N. Am. Rockwell Corp.*, 650 F.2d 823, 826-27 (finding continuing violation in failure-to-hire context where plaintiff was rejected from multiple positions

9

due to ongoing discriminatory policy).

However, a continuing violation claim under the WPA still requires Saulter to establish a prima facie case of discrimination for reporting or planning to report a suspected violation. As previously discussed, Saulter has not established a protected activity or proffered any evidence of causation that is necessary under the WPA. Consequently, the Court will grant a summary judgment in favor of DAAA with respect to both WPA claims.

In Count III of her amended complaint, Saulter alleges that the DAAA violated the Michigan WDCA by retaliating against her for filing a worker's disability compensation claim. The DAAA disagrees by arguing in support of its motion for summary judgment that (1) the decision to terminate Saulter's position was made before she filed for worker's compensation; (2) Saulter cannot offer evidence that its decisions not to hire her for additional positions were motivated by her disability compensation claim; and (3) the WDCA retaliation provisions do not apply to rejections that occurred after Saulter's initial termination as an employee.

The WDCA prohibits an employer from discriminating against an employee because the employee filed a complaint or instituted a proceeding under the WDCA. Mich. Comp. Laws § 418.301(11). In order to make a claim under the WDCA, Saulter must show that (1) she asserted her right for worker's compensation; (2) she was discharged or her employment was adversely affected; (3) the DAAA's stated reason for its action was merely a pretext; and (4) the DAAA's true reason for its actions was to retaliate for Saulter's filing of a worker's compensation claim. *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822 (E.D. Mich. 2005) (citing *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 404 (Mich. Ct. App. 1999)). Michigan law requires a plaintiff to demonstrate that the filing of a worker's compensation claim was a "significant factor" in the adverse

10

employment action. *Id.* at 824. If Saulter establishes this prima facie case, the burden shifts to the DAAA to articulate a legitimate, non-retaliatory reason for the adverse employment decision. *Id.* at 822. If the DAAA meets this burden of production, Saulter must then show by a preponderance of the evidence that the proffered reason was merely pretext. *Id.*

The DAAA asserts that its decision to eliminate Saulter's position was made before she filed for worker's compensation, and, as a consequence, it could not have been in retaliation for filing the claim. Michigan courts have found that a plaintiff may not maintain a cause of action for retaliatory discharge based on the anticipated filing of a worker's compensation claim. *See, e.g.*, *Griffey v. Prestige Stamping, Inc.*, 473 N.W.2d 790, 791 (Mich. Ct. App. 1991) (finding that retaliatory discharge premised upon employer's anticipation of future claim was not valid cause of action); *Wilson v. Acacia Park Cemetery Ass'n*, 413 N.W.2d 79, 83 (Mich. Ct. App. 1987) ("[R]etaliatory discharge premised upon the employer's anticipation of a future claim does not state a legally cognizable cause of action."). Thus, the Court concludes that Saulter cannot claim retaliation for filing a claim of worker's compensation when her position was terminated before she filed the claim.

Further, the Court finds that Saulter has not established a prima facie case for a WDCA violation. Saulter says that her termination occurred shortly after she began to assert a WDCA claim. However, Michigan law requires more than a mere temporal connection in order to establish causation. *Dortman*, 405 F. Supp. 2d at 824 (citing *West*, 665 N.W.2d at 472-73).

Additionally, the Court recognizes that WDCA only applies to employees. Mich. Comp. Laws § 418.301(13). Accordingly, Saulter cannot rely on this statute to claim discrimination in those instances where she was denied positions because she was not contemporaneously an employee.

Consequently, the Court will grant a summary judgment in favor of the DAAA with respect

to Saulter's WDCA claim.

In Count IV of her amended complaint, Saulter alleges that the DAAA violated the Americans with Disabilities Act of 1964 when it terminated her employment because it perceived her as being a disabled person.[3] In support of its motion for summary judgment, DAAA submits that Saulter has not offered proof that she was disabled during any of the times that are relevant to this action. The ADA prohibits employers from discriminating against a qualified individual on the basis of disability. 42 U.S.C. § 12101 et seq. For the purposes of this act, the term "disability" means that the individual possesses "a physical or mental impairment that substantially limits one or more major life activities" or is "regarded as having such an impairment." *Id.* § 12102(1)(A), (C). Potential discriminatory actions under the ADA include the termination of current employment or a denial of employment opportunities. *Id.* § 12112. In order to establish a prima facie case of disability discrimination, Saulter must show that she (1) is disabled within the meaning of the ADA, (2) was otherwise qualified for the position, with or without reasonable accommodation, (3) suffered an adverse employment decision, and (4) suffered such action under circumstances which give rise to an inference of unlawful discrimination. *See Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

The DAAA contends that Saulter has failed to establish a prima facie case of discrimination because she has not shown that her former employer believed that she was disabled within the

---

[3]In Count IV of her amended complaint, Saulter asserts a violation of the Americans with Disabilities Act. However, the complaint cites to 42 U.S.C. § 2000e et seq., which corresponds to Title VII rather than the ADA. Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §2000e–2(k)(1)(A)(i). To the extent that Saulter intended to make a Title VII claim, she has not proffered any evidence that DAAA discriminated based on any of Title VII's protected classes. Here, the Court will analyze Saulter's claim with regard to the ADA, and not Title VII.

meaning of the ADA. Specifically, DAAA contends that Saulter's stress which led to her short-term disability medical leave does not qualify as a disability under the ADA due to its limited duration. Courts often find that job-related stress is not a qualifying disability under the ADA. *See, e.g.*, *Powell v. Morris*, 37 F. Supp. 2d 1011, 1015 (S.D. Ohio 1999). Here, Saulter has not presented any specific evidence that she experienced - or that the DAAA perceived that she experienced - any physical or mental limitations that substantially limited her ability to function. Accordingly, the Court finds that Saulter has failed to establish the first prong of her prima facie case.

Even if her stress could qualify as a disability under the ADA, Saulter has not proffered any evidence that the termination of her position was the result of any alleged perception of disability by the DAAA. Although Saulter does not need to show that her disability was the sole cause of an adverse employment action, the case law in this Circuit mandates that she must establish that the decision by the DAAA was caused by discrimination due to her actual or perceived disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 316-17 (6th Cir. 2012). When asked to explain the basis for her claim during her deposition, Saulter was only able to provide the following: "So I'm doing what you're asking for these positions, yet, still, these are not offered to me. And, you know, again, it's, like, why. I guess the question I'm asking is you tell me. You must view something is wrong with me." (Saulter Dep. 163:10-164:2). Her speculation does not create any evidence of causation. As a consequence, the Court finds that Saulter has not established a prima facie case with respect to her ADA claim.

In Count V of her amended complaint, Saulter alleges that the DAAA subjected her to discrimination due to her perceived physical condition in violation of the Michigan Elliot-Larsen Civil Rights Act.[4]

In support of its motion for summary judgment, the DAAA maintains that Saulter has not stated a viable claim because ELCRA does not prohibit discrimination based on any perceived physical condition. ELCRA prohibits employers from refusing to hire or discharging an individual "because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202(a). Since this statute does not protect an individual against discrimination due to perceived physical condition, the Court will grant summary judgment in favor of the DAAA with respect to this claim.

In Court VI of her amended complaint, Saulter alleges that the DAAA violated the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., by eliminating her position while she was on a family medical leave. In support of its motion for summary judgment, the DAAA argues that (1) the FMLA prohibits discrimination based on leave, but it does not universally prohibit the termination of any employee on leave; and (2) Saulter's FMLA leave was exhausted on March 23, 2010, prior to the termination of her position.

FMLA is designed to protect employees who take leave for certain protected events, including a disabling health problem, a family member's serious illness, or the arrival of a baby. 29 U.S.C. § 2612(a)(1). The central provision of FMLA guarantees twelve weeks of leave to eligible employees in a one-year period for these situations. *Id*. Upon the employee's return from leave,

---

[4] Saulter cites to "MCLA 37.101" in her complaint and "MCL 37.3101, *et seq.*" in her response to the DAAA's motion for summary judgment. Although Saulter never cited to ELCRA at Mich. Comp. Laws § 37.2101 et seq., the Court assumes Saulter intended to do so.

FMLA requires the employer to reinstate the employee to her former position or an equivalent. *Id.* § 2614(a)(1).

In order to establish a prima facie case under the FMLA, Saulter must show: (1) she was an eligible employee under the FMLA; (2) the DAAA is an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the DAAA notice of her intent to take leave; and (5) the DAAA denied or interfered with her FMLA benefits as defined in 29 U.S.C. § 2615. *See, e.g.*, *Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004). However, FMLA does not entitle any employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* §2614(a)(3)(B). In effect, this means that "an employer need not restore an employee who would have lost his job or been laid off even if he had not taken FMLA leave." *Hoge*, 384 F.3d at 245; *see also Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."). If the DAAA proffers a non-discriminatory justification, then Saulter may seek to rebut it by a preponderance of the evidence. *See Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008). Specifically, Saulter must show that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (citations and internal quotation marks omitted).

Even if Saulter is able to establish a prima facie case, the DAAA contends that the termination of her position was part of a legitimate economic decision that would have occurred

15

even if she had not been on leave. Since Saulter has not presented any evidence with which to rebut this proffered explanation, her claim cannot succeed.

IV.

For the reasons that have been set forth above, the DAAA's motion for summary judgment is granted with respect to all counts. (ECF 13).

IT IS SO ORDERED.

Date: August 31, 2012　　　　　　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 31, 2012.

　　　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　　　　Case Manager